Nott, <J.,
concurring:
The joint resolution for the relief of George Ohorpenning is an exceedingly obscure enactment, embracing different and incongruous subjects, and containing provisions hitherto unknown to our statutory law. The resolution referred to the Postmaster-General a new and "substantial cause of action, which was a proper subject for investigation and adjustment, or for arbitrament and award; it also, and without discrimination, referred another matter which had been j udicially determined to be at an end, and as a cause of action to have no legal existence. (Chorpenning’s Case, 3 C. Cls. R., p. 140.) If it were intended that the Postmaster-General should act as an arbitrator, the intention is met by the fact that the Supreme Court had then decided that as to half the ’ matter here referred he could only act ministerially. If the intention was that he should act as an accounting-officer, it is likewise met by the fact that an appeal was allowed to a judicial tribunal, and that the Supreme Court had also decided that an appeal cannot be given to a court of the United States from the acts of an officer acting ministerially. (The United *634 States v. Fereira, 13 How., p. 40.) If it be said that the appeal was intended to be to the judges as commissioners, the suggestion is negatived by the fact that it is in express terms to the “court,'” and that the Supreme Court has decided that the reference of a power to a court, eo nomine, precludes the judges from acting in the capacity of commissioners. (The United States v. Todd, 13 How., 52, note.) As to the right of appeal which the joint resolution gives, there is no remedy prescribed,, no time fixed, nor does the resolution refer it to any established system, nor does any such system, indeed, exist. In short, it-is impossible to administer this statute until it is holpen out by a species of judicial legislation. When such judicial legislation is applied in one way, it will be very easy to say that Congress manifestly intended the reference to the Postmaster-General should be a mere accounting, binding nobody; and when the judicial legislation is applied in another way, it will be equally easy to say that Congress manifestly intended the-reference to be an arbitrament, final and conclusive, and mutually obligatory in its character; but until some such help is-applied to the enactment, there are no two judges who can agree as to what it does mean, or indeed that it means anything.
Assuming that two duties were devolved upon the Postmaster-General by the resolution, and that the one was a ministerial re-adjustment of an account under Gordon’s Case, (7 C. Cls. R., p. 46,) and the other an arbitrament under Kendall v. Stokes,. (12 Peters’ R., p. 524,) and that the so-called award of the Postmaster-General can be so divided as to lay out of sight the-matter of accounting, and to bring before ns simply the matter of arbitrament, the case will then present the very question-suggested by Mr. Justice Thompson in Kendall v. Stokes, viz, the effect of a repeal of the referring act before the payment and ratification of the award.
I regret that this question is not to be exhaustively examined and finally determined, for it is a question which for many years-has been appearing and disappearing and re-appearing; and for many reasons it is desirable that the rule in regard to it be authoritatively declared. The examination which I have been able to give to it is trivial, but I am inclined to think that the rule must be substantially as follows: These statutes, referring a claim to a public officer to settle and adjust or to investigate *635 and award, continue to lack that mutuality of obligation which is essential to bind either party, until the reference reaches the point where it receives a mutual and final ratification by the payment of the award on the one side and acceptance thereof on the other. In the ordinary arbitrament of individuals the award is conclusive from the moment it is made, not because of the judicial character of the umpire, but because the parties,, by express agreement, have imparted to his decision that finality which is inherent without agreement in the decisions of judicial tribunals. I have no doubt that if Congress were to so frame a private act as to pledge the Government on the one hand and require from the claimant an express agreement on the other, there would ensue a binding submission, and that aD award made in pursuance thereof would confer a vested right and be in itself a good cause of action, not revocable at the pleasure of either party and not affected by the subsequent repeal of the enactment. (Twenty-per-cent. Cases, 9 C. Cls. R., p. 103.) But under statutes like the one now under consideration there is no such binding mutuality of submission. The claimant is not bound to go before the arbitrator; he is not bound to remain there if he goes, nor to await his decision, nor to abide by it when it comes, and, in the absence of his express agreement, no' estoppel will arise binding him until he has received a benefit y in other words, until he has accepted an award. If the award be against him or for a trifling amount, he can say that he never agreed to be bound by it; that the tribunal was not judicial y and that Congress never provided that its decision should be obligatory upon either party. What the one party may do in such a case the other may do; what does not bind both does not bind either, and the disaffirmance by the Government in this case appears to me to be nothing more than the exercise of a right which both parties possessed, and which either, up to-the time of final ratification, could resort to at pleasure.